IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
No. 3 : 24-CV-385

LOWE'S HOME CENTERS, LLC,

    Plaintiff,

v.

INDEMNITY INSURANCE COMPANY OF NORTH AMERICA,

    Defendant.

COMPLAINT AND DEMAND FOR JURY TRIAL

## COMPLAINT

Plaintiff Lowe's Home Centers, LLC ("Lowe's") files this Complaint against Defendant Indemnity Insurance Company of North America ("IICNA"), alleging as follows:

## NATURE OF ACTION

1. Lowe's brings this action against IICNA, an insurer that issued an excess liability insurance policy to Lowe's, because IICNA has wrongfully and tortiously denied its duties to indemnify Lowe's in connection with the civil action styled, *Jason Sprague et al. v. Lowe's Home Centers, LLC, et al.*, Case No. 42739, 76th Judicial District, Titus County, Texas (the "Sprague Lawsuit").

## PARTIES

2. Lowe's is a limited liability company organized under the laws of North Carolina, with its principal place of business at 1000 Lowes Blvd., Mooresville, North Carolina 28117. Lowe's Companies, Inc., is the sole member of Plaintiff Lowe's.

3. Lowe's Companies, Inc. is a North Carolina corporation with its principal place of business at 1000 Lowes Blvd., Mooresville, North Carolina 28117.

4. IICNA is a corporation organized under the laws of the State of Pennsylvania with its principal place of business in Pennsylvania. IICNA has written insurance policies covering risks and citizens located in North Carolina and is otherwise transacting insurance business in the State of North Carolina.

## JURISDICTION AND VENUE

5. The subject matter jurisdiction of this Court is based upon 28 U.S.C. § 1332, in that there is complete diversity of citizenship among the parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. This Court has personal jurisdiction over IICNA because, at all relevant times, IICNA has engaged in business activities in the State of North Carolina and has otherwise purposefully availed itself of this jurisdiction, including by issuing the insurance policy at issue in this lawsuit to Lowe's in North Carolina.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because IICNA is subject to personal jurisdiction in this District and a substantial portion of the events giving rise to this suit took place in this district in that IICNA issued the insurance policy at issue in this lawsuit to Lowe's in this District, denied indemnity coverage to Lowe's in this District, and the impact of IICNA's breach and IICNA's tortious conduct will be felt in this District.

## RELEVANT FACTS APPLICABLE TO ALL CLAIMS

**A.     The Lowe's Insurance Program**

8. In 2022, Lowe's purchased a tower of liability insurance, including auto liability insurance, that provides Lowe's with insurance coverage for, among other things, lawsuits seeking

damages for bodily injuries arising from Lowe's business during the period of April 1, 2022 through April 1, 2023.

9. The Lowe's auto liability insurance program is comprised of a tower of insurers, each issuing their own primary, umbrella, or excess layer insurance policies, up to certain limits of liability.

10. IICNA issued an excess liability insurance policy to Lowe's under Policy Number XSM G72570819 001, for the policy period of April 1, 2022 to April 1, 2023 (the "Policy"), which covers both auto liability claims and other claims. A true and correct redacted copy of the Policy is attached hereto as **Exhibit A** and the Policy's terms are incorporated herein by reference in full.

11. As stated more fully in the IICNA Policy, subject to the additional terms and conditions of the Policy, including the Policy's $10 million limits of liability, IICNA agreed to pay those sums that Lowe's became liable to pay, by reason of judgments or settlements, for any "liability covered by and as more fully defined in the Lead Underlying Policy," provided that the Policy only applies when "the Insured and/or the Underlying Insurers . . . have paid or have been held liable to pay the full amount of the Underlying Limits for damages covered by the Lead Underlying Policy."

12. The Lead Underlying Policy under the Policy that IICNA issued to Lowe's is Great American Assurance Company Policy No. UMB4138330 (the "Great American Policy"), the terms of which are incorporated herein by reference in full.

13. The Great American Policy provides umbrella liability coverage for a variety of liability risks, including auto liability claims. The Great American Policy provides in relevant part that:

> [The Insurers] will pay on behalf of the 'Insured' those sums in excess of the Schedule of Retained Limits that the 'Insured'

- 3 -
Case 5:24-cv-00101-KDB-DCK   Document 1   Filed 04/11/24   Page 3 of 13

becomes legally obligated to pay as damages, by reason of liability imposed by law . . . because of: 'bodily injury' or 'property damage that takes place . . . during the Policy Period and caused by an 'occurrence' happening anywhere.

14. The Policy further obligates IICNA, where a loss "appears reasonably likely to involve" IICNA's limits, to "co-operate in all things in the defense, investigation, and settlement of such claim, suit, or proceeding."

**B.     The Sprague Lawsuit and Lowe's Insurance Claim**

15. On July 24, 2022, and during the IICNA policy period, a commercial tractor-trailer allegedly operated by a Lowe's employee ran a stop sign at excessive speed and collided with a passenger vehicle, resulting in fatal bodily injuries to a 16-month-old infant child and serious bodily injuries to his adult parents (collectively, the "Sprague Family").

16. As a result of this accident, Lowe's was sued in the Sprague Lawsuit for claims sounding in negligence. A true and correct copy of the operative complaint in the Sprague Lawsuit is attached hereto as **Exhibit B** and is incorporated herein by reference.

17. After being sued in the Sprague Lawsuit, Lowe's timely tendered the Sprague Lawsuit to its auto and excess liability insurers, including IICNA, and demanded indemnification for the same.

18. All of Lowe's insurers, including IICNA, acknowledged that the Sprague Lawsuit was covered by their respective policies subject to the applicable limits of liability.

19. Throughout the course of the Sprague Lawsuit, Lowe's provided its insurers, including IICNA, regular updates regarding the status of the defense, defense counsel's valuation of the case, and settlement discussions with the Sprague Family.

20. Importantly, Lowe's provided its insurers with complete, timely, and detailed updates regarding the significant aggravating factors that considerably increased the risk of an

excess verdict should the dispute proceed to trial. Among other things, Lowe's timely provided the insurers, including IICNA, with a detailed letter from the Sprague Family's counsel detailing the evidence that plaintiff's counsel intended to present at trial, including evidence plaintiff's counsel argued indicated that the Lowe's employee who was operating the commercial tractor-trailer was impaired by drugs and/or alcohol at the time of the accident and evidence plaintiff's counsel argued indicated that the Lowe's employee was conspiring to falsify a drug test at the scene of the accident, even while the infant's parents were attempting to save their child's life.

21. On April 10, 2023, the Sprague Family issued a settlement demand to Lowe's for an amount that was within the policy limits of Lowe's insurance tower, including IICNA's layer of insurance. Lowe's immediately informed its insurance carriers including IICNA of the demand.

22. In addition, on May 1, 2023, Lowe's provided IICNA, and the other insurers, with a letter containing detailed information regarding the valuation of the Sprague Lawsuit and litigation risks associated with the dispute.

23. Lowe's also provided its insurers with its defense counsel's recommended reasonable settlement range. IICNA's layer of insurance fell within defense counsel's recommended reasonable settlement range.

24. Lowe's and the Sprague Family participated in mediations of the Sprague Lawsuit on June 2, 2023, and December 5, 2023.

25. Lowe's invited all of its auto and excess liability insurers to attend both mediations, including IICNA.

26. Neither mediation resolved the Sprague Lawsuit.

27. Following the December 5, 2023 mediation, the mediator continued a settlement dialogue between Lowe's and the Sprague family, which Lowe's kept its insurers, including

IICNA, contemporaneously apprised of.

28. Settlement discussions accelerated as an April 15, 2024 trial date approached.

29. On March 26, 2024, certain insurers that issued policies to Lowe's in excess of the IICNA Policy wrote to insurers, including IICNA, to remind them of the nature of the "high exposure" case, defense counsel's settlement valuation range (which the IICNA layer fell within), and demanded that all of those insurers engage in reasonable settlement negotiations.

30. That letter from the excess insurers, described the lower layer insurers' settlement offers to date as "inadequate" and reiterated that IICNA, and the other insurers, had a "duty to accept a reasonable settlement within its policy limits." That letter is incorporated herein in full by reference, but not attached to this complaint due to confidentiality considerations.

31. On numerous update calls during this period, both Lowe's and monitoring counsel for the excess layer insurers cautioned that the Sprague Lawsuit should not be used as a "test case," and should be settled given the significant aggravating factors and serious risk of an excess verdict.

32. On March 29, 2024, Lowe's reiterated its demand that the insurers, including IICNA, act reasonably and in good faith toward Lowe's, by accepting a settlement within the range (that included the IICNA layer of coverage) that defense counsel had consistently recommended Lowe's and its insurers accept.

33. On April 4, 2024, the mediator announced that a mediator's proposal was forthcoming.

34. The mediator issued his mediator's proposal on April 5, 2024. That proposal was within the reasonable settlement range that defense counsel had consistently advised the insurers, including IICNA, should be accepted.

35. Lowe's contemporaneously shared the mediator's proposal with its insurance

carriers, including IICNA, reiterating that the proposal was within defense counsel's recommended reasonable settlement range and demanding that its carriers accept that proposal, based on defense counsel's recommendation.

36. Also on April 5, 2024, Lowe's provided a confidential update to the insurers regarding developments in the Sprague Lawsuit. Based on those developments, Lowe's reiterated its demand that the insurers accept the mediator's proposal.

37. In the days following the issuance of the mediator's proposal, Lowe's and defense counsel repeatedly advised the Lowe's insurers, including IICNA, that the mediator's proposal was reasonable and should be accepted in written and oral reports to the insurers. Lowe's incorporates those communications herein by reference but does not attach those communications to this Complaint due to confidentiality considerations associated with those defense communications.

38. Based on the information contained in those reports, any reasonable insurer in IICNA's position that was acting in good faith would have consented to the settlement and agreed to fund its share of the mediator's proposed settlement.

39. After defense counsel provided its update regarding the mediator's proposal, Lowe's informed its insurers that it believed the mediator's proposal should be accepted and that Lowe's was tendering its self-insured retention toward the settlement of the Sprague Lawsuit.

40. Lowe's further demanded that its insurers, including IICNA, consent to Lowe's accepting the mediator's proposal and that those insurers whose limits were implicated by the mediator's proposal, including IICNA, agree to fund the settlement consistent with the terms of their respective policies.

- 7 -
Case 5:24-cv-00101-KDB-DCK   Document 1   Filed 04/11/24   Page 7 of 13

41. Importantly, all of the Lowe's insurers whose limits were implicated by the mediator's proposal agreed to fund the mediator's settlement proposal, with the *sole exception* of IICNA.

42. IICNA alone refused to consent to the settlement of the Sprague Lawsuit or contribute *any portion* of its layer toward the settlement of the Sprague Lawsuit.

43. IICNA refused, wrongly and without justification, to indemnify Lowe's for IICNA's share of the reasonable settlement of the Sprague Lawsuit.

44. IICNA's refusal to contribute toward the reasonable settlement of the Sprague Lawsuit forced Lowe's to fund IICNA's share of the settlement amount, or risk losing the opportunity to resolve the Sprague Lawsuit for a reasonable amount, given the near certainty of a liability finding and the significant risk of an excess verdict.

45. IICNA's conduct, in choosing to roll the dice and risk an excess verdict rather than resolving this dispute in line with the consistent, uniform recommendations of defense counsel, put its own interests ahead of Lowe's.

46. There are no coverage defenses to the settlement.

47. All conditions precedent to coverage have been satisfied or waived.

48. No exclusions, conditions, or other provisions in IICNA's Policy excuses IICNA's non-performance.

49. No reasonable insurer in IICNA's position, knowing the information IICNA knew, would have refused to consent to the settlement.

50. IICNA's refusal to consent to the settlement was arbitrary and not based on any honest disagreement or innocent mistake.

## COUNT I
(Breach of Contract – Failure to Indemnify)

51. Lowe's repeats and re-alleges the foregoing allegations, which are incorporated, in full, by this reference.

52. In the circumstances here, IICNA had a duty under the Policy to consent to Lowe's accepting the mediator's proposal and agree to pay its $10 million share of the settlement.

53. IICNA refused to honor its contractual commitments and has unreasonably denied its duty to indemnify Lowe's for the settlement of the Sprague Lawsuit.

54. Plaintiff has not otherwise excused IICNA's non-performance.

55. As a result of IICNA's breach, Lowe's has been forced to fund IICNA's $10 million share of the settlement to avoid the risk of trial.

56. IICNA's conduct has materially breached its obligations under the Policy.

57. Lowe's has suffered and continues to suffer damages as a direct and proximate result of the IICNA's breach of its obligations under the Policy in excess of the jurisdictional minimum of this Court, with the exact amount to be proven at trial.

58. Lowe's reserves the right to conform its claim for damages consistent with proof at trial.

## COUNT II
(Bad Faith Refusal to Settle a Valid Claim)

59. Lowe's repeats and re-alleges the foregoing allegations, which are incorporated, in full, by this reference.

60. The Policy contains, and applicable law imposes, an implied covenant of good faith and fair dealing in policies of insurance.

61. IICNA, breached its duty of good faith and fair dealing owed to Lowe's under the Policy, and applicable law, in the following respects, among others:

    a. Wrongfully refusing to pay policy benefits after recognizing a valid and payable claim;

    b. Refusing to properly investigate the facts related to the claims asserted against Lowe's in the Sprague Lawsuit without a proper excuse, and refusing to evaluate those facts properly to come to a reasonable and justifiable determination;

    c. Ignoring relevant evidence available, as well as relevant case law, supporting indemnification for the Sprague Lawsuit without justification; and

    d. By placing its own interests ahead of Lowe's.

62. As a direct and proximate result of IICNA's breach of the implied covenant of good faith and fair dealing, Lowe's has suffered actual and consequential damages and out of pocket expenses in a total amount to be shown by proof at time of trial.

63. In breaching the implied covenant of good faith and fair dealing, IICNA acted in a manner knowingly harmful to and/or in reckless or wanton disregard of the rights of Lowe's reflecting malice and/or oppression, with the intention of benefitting itself financially and with the intention of causing, or recklessly disregarding the probability of causing, injury to Lowe's.

64. In so acting, IICNA acted with a willful and conscious disregard of its insured's rights and the consequences of those actions on its insured, and with the deliberate intent to injure Lowe's so as to deprive it of its rights under the Policy and advance IICNA's own pecuniary interests.

65. IICNA's conduct warrants the imposition of punitive and exemplary damages in an amount sufficient to punish IICNA for such conduct and the imposition of attorney's fees for pursuit of this coverage action.

## COUNT III
(Unfair Claims Settlement Practices and Unfair & Deceptive Trade Practices)

66. Lowe's repeats and re-alleges the foregoing allegations, which are incorporated, in full, by this reference.

67. The conduct of IICNA in refusing to provide coverage to Lowe's for IICNA's share of the settlement of the Sprague Lawsuit constitutes unfair claims settlement practices that violates one or more of the subparts of N.C.G.S. § 58-63-15(11), and Unfair & Deceptive Trade Practices in violation of Chapter 75 of the North Carolina General Statutes, including, but not limited to:

   a. Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear;

   b. Compelling the insured to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amount actually due to such insured;

   c. Refusing to pay a claim without conducting a good faith reasonable investigation;

   d. Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement; and

   e. Other particulars as will be adduced through further investigation, discovery, or at trial.

68. Moreover, with IICNA's actual and/or constructive knowledge of the damages and coverage therefore, IICNA unfairly and unlawfully failed to promptly investigate, adjust, and pay monies owed to Lowe's under the Policy in violation of North Carolina law, N.C.G.S. § 58-63, and Chapter 75 of the North Carolina General Statutes.

69. The factually specific statutory violations, in part, are outlined above and said violations, in part, correspond to violations of provisions of North Carolina law found from

- 11 -
Case 5:24-cv-00101-KDB-DCK   Document 1   Filed 04/11/24   Page 11 of 13

N.C.G.S. § 58-63-15(11)(a) through N.C.G.S. § 58-63-15(11)(n).

70. IICNA's above-described conduct, in violation of N.C.G.S. § 58-63-15(11), is a per se violation of N.C.G.S. § 75-1.1.

71. IICNA's conduct directly violates N.C.G.S. § 75-1.1 in that IICNA's acts were unfair, unscrupulous, immoral, deceptive, oppressive, and substantially injurious to Lowe's and were an inequitable assertion of its power and position over Lowe's under the circumstances.

72. IICNA's unfair and deceptive trade acts or practices were in or affecting commerce.

73. As a proximate result of IICNA's unfair claims settlement practices and unfair and deceptive trade acts and practices, Lowe's has suffered damages in an amount equal to the benefits currently due under the Policy as well as additional damages to be proven at trial.

74. Pursuant to N.C.G.S. § 75-16, Lowe's is entitled to treble its damages.

75. Pursuant to N.C.G.S. § 75-16.1, Lowe's is entitled to an award of reasonable attorney's fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Lowe's respectfully prays for the Court to enter judgment in its favor and against IICNA as follows:

    a. That Lowe's recover from IICNA all direct, consequential, and compensatory damages for breach of contract in an amount to be proven at trial;

    b. That Lowe's recover from IICNA treble damages or punitive damages at the election of Lowe's;

    c. That the Court award Lowe's all pre-judgment and post-judgment

interest at the maximum allowable rate;

d. That the Court award Lowe's its costs and expenses, including but not limited to its attorneys' fees in bringing and pursuing this action; and

e. That the Court award Lowe's any and other further relief to which it is entitled.

## **JURY DEMAND**

Lowe's hereby demands a trial by jury in this action for any and all issues so triable.

This 11th day of April, 2023.

/s/ R. Steven DeGeorge
R. Steven DeGeorge
N.C. State Bar No. 20723
sdegeorge@robinsonbradshaw.com

ROBINSON BRADSHAW & HINSON, PA
101 N. Tryon Street, Suite 1900
Charlotte, NC 28246
(704) 377-8380

Amber S. Finch (*pro hac vice* forthcoming*)*
REED SMITH LLP
355 South Grand Avenue, Suite 2900
Los Angeles, CA, 90071
(213) 457-8000
afinch@reedsmith.com

Dominic I. Rupprecht (*pro hac vice* forthcoming)
REED SMITH LLP
225 Fifth Avenue
Pittsburgh, PA 15222
(412) 288-3131
drupprecht@reedsmith.com

*Attorneys for Plaintiff Lowe's Home Centers, LLC*