IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CASE NO. 5:24-CV-101-KDB-DCK

| | |
|---|---|
| LOWE'S HOME CENTERS, LLC, | ) |
| Plaintiff, | ) **PROTECTIVE ORDER** |
| v. | ) |
| INDEMNITY INSURANCE COMPANY OF NORTH AMERICA, | ) |
| Defendant. | ) |

**THIS MATTER IS BEFORE THE COURT** on the Parties' "Joint Motion To Enter Stipulation And Order Regarding Discovery Of Electronically Stored Information And Hard Copy Documents" (Document No. 34) filed October 10, 2024. Having carefully considered the motion and the record, the undersigned will grant the motion and enter the Parties' proposed Protective Order as follows.

## I. DEFINITIONS

1. "**Party or Parties**" means and refers to the named Parties in the above-captioned matter, as well as any later added party, as well as their directors, principals, employees, agents, and affiliated companies.

2. "**Receiving Party**" is defined to be any person who receives from any other person, Party or non-party (the "Producing Party") any Documents in response to written discovery in the above-captioned case (the "Civil Action").

3. "**Electronic Document or Data**" means Documents or Data existing in electronic form at the time of collection, including but not limited to: email or other means of electronic communications, word processing files (*e.g.*, Microsoft Word), computer presentations (*e.g.*, PowerPoint slides), spreadsheets (*e.g.*, Excel), and image files (*e.g.*, PDF, JPEG, TIFF, GIF).

4. "**Document(s)**" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents and electronically stored information" in Fed.R.Civ.P. 34(a). This definition encompasses all forms and manifestations of electronically stored and/or retrieved electronic information ("ESI"), including but not limited to, emails and any related attachments, and electronic files, and hard copy documents, and other sources of discoverable electronic data including but not limited to network file shares, cloud based file shares (OneDrive, Dropbox, etc.), text messages, social media applications (professional accounts and personal if used to conduct business or market to potential customers), personal email accounts used to conduct business, personal mobile devices used to conduct business or market to potential customers, instant messenger applications, CRM or other databases, audio recordings (such as voicemail), videos, or any other potential source that may contain responsive data as identified throughout the course of discovery.

5. "**Electronically stored information**" or "**ESI**," will be part of the discoverable material in this case. The Parties agree to cooperatively exchange in a reasonably usable form (as set forth below), responsive, non-privileged ESI and use reasonable and proportional efforts to identify, preserve, collect, and produce responsive, non-privileged information.

6. "**Hard-Copy Document**" means Documents existing in paper form at the time of collection.

7. "**Time Zone**" refers to the Universal Time Coordinated ("UTC") in which the emails were standardized during conversation.

8. "**Native Format**" means and refers to the format of ESI in which it was originally created and/or as used by the Producing Party in the usual course of its business and in its regularly conducted activities. For example, the native format of an Excel workbook is a .xls or .xlsx file.

9. "**Static Image(s)**" means a representation of ESI produced by converting a Native

File into a standard image format capable of being viewed and printed on standard computer systems. A Tagged Image File Format ("TIFF") image is an example of a Static Image.

10. "**Metadata**" means: (i) information embedded in or associated with a native file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes the characteristics, origins, usage, and/or validity of the electronic file; (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system.

11. "**Optical Character Recognition**" or "**OCR**" means the process of digitally creating searchable text from a static document (*e.g.*, PDF, TIFF, JPEG, Hard-Copy Document).

12. "**Load file**" means electronic file(s) containing information identifying a set of paper-scanned images or processed ESI and indicating where individual pages or files belong together as documents, including attachment ranges and parent/child relationships, and where each document begins and ends. A Load/Unitization file will also contain data relevant to the individual Documents, including extracted and user created Metadata, coded data, as well as paths to separate natives, OCR or Extracted Text files, that is provided with a production set of documents and images used to load that production set into a receiving party's document review platform, and correlate its data within that platform.

13. "**Extracted Text**" means the text extracted from a Native File.

14. "**TIFF Imaged Format**" means a single-page, Group IV, black & white, and 8 ½ x 11 inch page size format at a minimum of 300 x 300 dpi resolution.

## II. PURPOSE

15. This Stipulation and Order (the "Order") will govern discovery of electronically stored information ("ESI") and hard-copy documents ("Document" or "Documents") by the

Parties and their counsel of record in this action (Case No. 5:24-CV-101-KDB-DCK (W.D.N.C.)) (the "Action") whether they currently are involved, or become so in the future, as a supplement to the Federal Rules of Civil Procedure, and any other applicable orders and rules.

16. This Order shall also govern productions made by any third party who is subpoenaed in this Action unless otherwise agreed to by the issuing Party and the third party. Accordingly, this Order shall be attached to any subpoena issued in this Action.

### III. COOPERATION

17. The Parties are aware of the importance this Court places on cooperation and commit to cooperate in good faith throughout litigation of the Action.

### IV. GENERAL PROVISIONS

18. This Stipulation and Order shall not limit or expand the scope of discovery permissible under the Federal Rules of Civil Procedure, any Local Rule, or any other Court order. Except as specified herein, the Federal Rules of Civil Procedure, Local Rules for the Western District of North Carolina, and the Judge's Individual Practices shall govern discovery and motion practice. The Parties shall make good faith efforts to avoid duplicative or other unnecessary discovery.

19. This Stipulation and Order does not address and shall not be construed or interpreted to address or determine, whether documents, ESI, or any other information or data (collectively, "Discovery Material") produced subject to the terms of this Stipulation and Order is relevant or admissible in this action or any other action or proceeding. Admissibility of Discovery Material in this action shall be governed by the Federal Rules of Evidence, and/or any other applicable law, rule, or order of court. Any production of Discovery Material made pursuant to this Stipulation and Order is also subject to the requirements and protections set forth in the Protective Order entered by the Court (the "Protective Order").

20. Nothing in this Stipulation and Order requires disclosure of (i) irrelevant Discovery Material or (ii) relevant Discovery Material protected by the attorney-client privilege, the work-product doctrine or protection, or any other applicable privilege, protection, or immunity. Further, by entering into this Stipulation and Order, the Parties do not waive any objections as to the production, discoverability, authenticity, relevancy, admissibility, or confidentiality of any Discovery Material. Production of all Discovery Material in this action shall be without prejudice to and shall not waive, for purposes of this action or in any other state or federal proceeding, any attorney-client privilege, work-product protection, or any other privilege, protection, or immunity that otherwise would apply. This non-waiver provision should be interpreted to provide the broadest privilege protection allowable under any applicable law. However, to the extent that a Party chooses intentionally to waive privilege, attorney work product protection, or any other privilege, protection, or immunity (*e.g.* to use an otherwise privileged document in a proceeding) the scope of the waiver will be determined in accordance with applicable law (including, but not limited to the Protective Order), and not limited by these provisions. Nothing contained herein is intended, or shall serve, to limit any party's right to conduct a review of Discovery Material, for relevance, responsiveness, and/or identification of privileged or otherwise protected Discovery Material, before production of such Discovery Material to any requesting Party.

21. The existence of this Stipulation and Order shall not prohibit a Party seeking production of Discovery Material and a Party making a production of Discovery Material from agreeing to terms and conditions governing such production that differ from, or are in addition to, the terms and conditions set forth in this Stipulation and Order. Any such agreement shall be in writing.

V. PRESERVATION

22. The Parties have discussed their preservation obligations and needs and agree that

preservation of potentially relevant ESI (*e.g.*, email, text ESI, voicemail, spreadsheets, databases, etc.) and Documents will be reasonable and proportionate. To reduce the cost and burden of preservation and to ensure the proper ESI and Documents are preserved, the Parties agree that:

(a) The following data sources are not reasonably accessible, and the Parties agree that they need not be preserved: fragmented, or other data accessible only by forensic examinations; Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system; Online access data, such as temporary internet files, history, cache, cookies, and the like, that have not been retained in the usual course of business; computer system backups that are made for disaster recovery purposes; ESI filtered out by an automatic spam and/or virus filter used in the usual course of business; dynamic fields of databases or log files that have not been retained or backed up in the usual course of business, including server, system, network, or software application logs; data in metadata fields that are frequently updated automatically, such as last-opened dates; data stored on photocopiers, scanners, printers, and fax machines; and structural files not material to individual file contents (*e.g.*, .CSS, .DTD);

(b) the Parties will agree on the custodians, or general job titles or descriptions of custodians, for whom they believe ESI should be preserved. The Parties shall add or remove custodians as reasonably necessary; and

(c) the Parties shall make reasonable efforts to preserve the originals of all Documents as to which there may be issues of legibility of all or any part of the production copy. Each Party reserves the right to request to inspect such original Documents of the opposing Party or Parties, which request shall not be unreasonably denied. If such request to inspect is denied, the Party may seek relief from this Court.

## VI. SEARCH AND IDENTIFICATION

23. The Parties agree that in responding to an initial Fed. R. Civ. P. 34 request, or earlier if appropriate, they will meet and confer about methods to search ESI and Documents in order to identify ESI and Documents that are subject to production in discovery and filter out ESI and Documents that are likely not subject to discovery. The Parties are permitted to use reasonable search methods to narrow down the ESI and Documents to be reviewed for production in discovery (*e.g.*, search terms, technology assisted review, deduplication, elimination of correspondence with attorneys, client self-collection efforts, etc.); however, the Parties must disclose any search methodologies used to respond to any Fed.R.Civ.P. 34 request. In instances in which a Producing

Party becomes aware of the loss or destruction of relevant and non-duplicative information or ESI not designated above as not reasonably accessible, the Producing Party agrees to identify: (i) the circumstances surrounding the destruction or loss of the information or ESI; (ii) where and when the information or ESI was last retrievable in its original format; and (iii) whether the information is retrievable, and if so, any cost and/or burden of retrieving the information.

## VII. PRODUCTION SPECIFICATIONS

### A. Method of Production

24. Documents shall be produced electronically unless not technologically feasible or economically practicable. Where it is not technologically feasible or economically practicable to produce documents electronically, documents should either be produced in paper format or made available consistent with Federal Rule of Civil Procedure 34. The Parties shall provide sufficient information to identify the Document Custodian, which may not be an individual person, associated with each set of Documents produced.

25. Documents produced electronically shall be produced in TIFF format, at 300 x 300 dpi resolution, with the exception of color critical documents (*e.g.*, documents for which color is necessary to view or interpret the meaning of potentially relevant information, such as maps, graphs, and charts), or where production in native format is more practical (*e.g.*, spreadsheets, PowerPoint presentations, photographs, videos, audio files, and recordings). If the receiving Party feels that a different format of a document is necessary, they shall alert the Producing Party and request a replacement image(s) or the native document(s).

26. The Parties shall use reasonable, good-faith efforts to avoid the production of duplicate ESI. As such, the Parties agree to de-duplicate their respective ESI productions globally, where technologically feasible and economically practicable. The Parties further agree that reputable email threading software may be used to help identify lesser-included, duplicative email threads to help further reduce redundancy and costs associated with the production process.

B.  Bates Numbering

27. All documents produced shall be assigned a Bates number that must always: (a) be unique across the entire document production; (b) maintain a constant length (0-padded) across the entire production; (c) contain no special characters or embedded spaces; (d) be sequential within a given document; (e) use an appropriate Bates label prefix; and (f) have the Bates number burned into each electronic image or printed on each paper page. If a Bates number or set of Bates numbers is skipped in a production, the Producing Party shall so note in a cover letter, redaction log, or privilege log.

C.  Electronic Format

28. Each image shall have a unique file name, which is the Bates number of the document, and each image shall be placed into a folder called "IMAGES." Original document orientation shall be maintained (*i.e.*, portrait to portrait and landscape to landscape).

29. Each provided native file shall have a unique Bates number in accordance with this Stipulation and Order that corresponds to the Bates number of the associated placeholder referred to in this Stipulation and Order and will be produced in a folder named "NATIVES."

30. All documents produced in native format or made available pursuant to Federal Rule of Civil Procedure 34 shall have a TIFF "placeholder" page indicating the file is being produced in native format or being made available pursuant to Rule 34 and that is endorsed with the Bates number for that document so the image is viewable in Summation, Concordance, and Relativity.

31. To the extent a document is produced in redacted form, any redaction(s) shall be clearly indicated on the face of the document, and each page of the document from which information is redacted shall bear a designation that it has been redacted. Documents that are to be produced in native format, but that require redactions may be produced as TIFF images with

the relevant portions redacted, or if a TIFF image production is not practicable (*e.g.*, the file is a video or very large spreadsheet), the Producing Party may produce a copy of the native file with the relevant portions replaced with "[REDACTED]" or a similar mark.

32. All ESI, including but not limited to for native files and email, shall include at least the following original metadata fields contained therein (as applicable): ProdBeg; ProdEnd; BegAttach; EndAttach; PgCount; File Name; File Extension; Has Redactions (Yes/No); Subject; Date[Sent]; Time[Sent] (Date and Time information can appear in a single metadata filed if that is how it was maintained/processed); To; From; CC; BCC; File Date Created, File Date Modified, File Author; and Document Custodian. When available, the MD5 or SHA Hash should be provided as a metadata field. For documents that exist only in hard copy or as a scanned paper document, the following metadata shall be provided: ProdBeg; ProdEnd; BegAttach; EndAttach; Document Custodian; and OCR Text.

33. Where copies of photographs or original documents are provided electronically, the original film, photograph, or negative shall be made available for inspection upon request, provided that the original is within the possession, custody, or control of the Producing Party and can be located and obtained by the Producing Party without undue burden or cost.

34. In scanning paper documents, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records (*i.e.*, documents should be logically unitized when maintained in that form). In the case of an organized compilation of separate documents – for example, a binder containing several separate documents behind numbered tabs – the document behind each tab shall be scanned separately with a copy of the tab designation included or otherwise designated, but the relationship among the documents in the binder shall be reflected in proper coding of the beginning and ending document and attachment fields.

35. With respect to electronic documents, parent-child relationships (the association between an attachment and its parent document) shall be preserved. Where possible and applicable, attachments, enclosures, or notes will be produced sequentially to the documents/emails to which they are attached. For example, if a party is producing a relevant, non-privileged email along with its relevant, non-privileged attachments, the attachments shall be processed in order behind the email. Notwithstanding the above, individual privileged or non-relevant family members may be withheld from production.

36. Documents designated as "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY" as set forth in the Protective Order shall be marked "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY" at the bottom left-hand side of the page, without obscuring any imaged information or the Bates number. For native files designated as "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY," the placeholder TIFF image shall be marked "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY." For any documents produced in native format, producing Parties shall have the option of adding a "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY" legend embedded in the document in any manner that does not obscure or otherwise alter information contained in the document.

D. <u>OCR Text Files</u>

37. The parties shall use industry-standard OCR technology. For each document produced electronically, OCR text files shall be provided as a multi-page text file per document, not one text file per page. The text file name shall be the same as the page Bates number on the first page of the document. OCR files shall be provided for all redacted documents provided that the text files shall not contain any redacted portions of the documents. Should errors occur in processing the OCR, the Producing Party shall provide an error log that identifies images where the text could not be extracted. All OCR files shall be produced in a folder called "TEXT."

E. <u>Database Load Files / Cross-Reference Files</u>

38. Discovery Materials shall be provided in a format compatible with Summation, Concordance, and Relativity. The load files compatible with Concordance and Relativity shall contain the following data files: (a) ".Dat" for data loads and metadata when applicable including paths to the native and text files and (b) ".OPT" file for images. The load files compatible with Summation shall contain the following data files: (a) ".Dat" files for data loads and metadata when applicable and (b) ".DII" file for images with a token to the native files when applicable (@EDOC NATIVES) and either a token to the path of the text files (@O TEXT) or an ".LST" file for text loads. Each TIFF in a production shall be referenced in the corresponding load file. The total number of documents referenced in a production's data load file shall match the total number of designated document breaks in the Image Load files in the production.

39. Data files will provide document boundaries for all produced data and will use the following standard delimiters:

- Field Separator - ¶
- Quote Character - þ
- Multi-entry delimiter – ;

F. <u>Production Media</u>

40. The Producing Party shall produce Discovery Material via secure FTP site where feasible, or on readily accessible, computer or electronic media as the Parties may hereafter agree upon, including CD-ROM, DVD, or external hard drive (with standard PC compatible interface). The Producing Party shall accompany all document productions with a transmittal cover letter, sent to all other Parties by email (for productions via secure FTP site) or email and U.S. mail (for productions via computer or electronic media) identifying by Bates number the documents produced.

G. <u>Third Party Productions</u>

41. Any Party that obtains ESI from a third party in connection with the Litigation via subpoena shall produce a copy of the ESI to all other Parties. The Party in possession of the third-

party ESI may produce an exact copy of the third party's production to all other Parties and is under no obligation to satisfy the production requirements set forth in this Stipulation and Order. The Producing Party is encouraged, however, to Bates number the ESI consistent with the Party Bates numbers in its own production.

**VIII. ESI AND DOCUMENTS PROTECTED FROM DISCOVERY OR PUBLIC DISCLOSURE**

42. All productions are subject to any and all Protective Orders to be entered by this Court in this Action.

43. Provisions contained in any and all Protective Orders entered by the Court in this Action shall govern the disclosure of any material constituting or containing work product, or constituting or containing information protected by or any applicable privilege or privacy laws or regulations.

44. Within thirty (30) days of serving a production, the Producing Party shall serve on the receiving Party a Privilege Log (the "Log"), identifying all ESI and non-ESI that it either redacted or withheld from the production due to attorney-client or any other applicable privilege or work product protection. If a document is withheld in its entirety, the Log will provide, to the extent reasonably ascertainable, the following information regarding the document:[1]

    (a) description of the nature and subject matter of the Documents that, without revealing information itself privileged or redacted, will enable other Parties to assess the claim in accordance with Fed.R.Civ.P. 26(b)(5)(A)(ii);

    (b) date of the document or communication;

    (c) identities of any authors, addressees, and recipients, and where not apparent, the relationship of the author, addressees, and recipients to each other;

        i. to the extent applicable and reasonably available, the Parties shall use the From (or Author), To, CC, and BCC field from electronically generated metadata associated with the Document.

    (d) the nature of the privilege which is being claimed; and

---

[1] For email chains, the Parties will provide information gathered from the most recent email in the chain.

(e) the filename of the Document or the subject line of the emails logged; if the filename or subject line would reveal information that is privileged, however, the Party need not provide such information.

45. The Parties agree that certain privileged communications or documents need not be included in the Log, including any communications regarding litigation holds or preservation, collection, or review for this or any litigation or investigation, and any communication or document that post-dates the filing of the complaint in this Action.

## IX. GOOD FAITH

46. The Parties shall make their best good faith efforts to comply with and resolve any differences concerning compliance with this Order. If a Producing Party cannot comply with any material aspect of this Order, such Party shall inform the Requesting Party as to why compliance with this Order is unreasonable or not possible within ten (10) after so learning.

## X. MODIFICATION

47. This Order may be modified by the Court for good cause shown or following a stipulation of the parties in writing.

**SO ORDERED**.

Signed: October 10, 2024

David C. Keesler
United States Magistrate Judge

**SO STIPULATED AND AGREED**.

Dated: October 8, 2024

/s/ Dominic I. Rupprecht
R. Steven DeGeorge
N.C. State Bar No. 20723
sdegeorge@robinsonbradshaw.com

ROBINSON BRADSHAW & HINSON, PA
101 N. Tryon Street, Suite 1900
Charlotte, NC 28246
(704) 377-8380

Amber S. Finch (admitted *pro hac vice*)
REED SMITH LLP
355 South Grand Avenue, Suite 2900
Los Angeles, CA, 90071
(213) 457-8000
afinch@reedsmith.com

Dominic I. Rupprecht (admitted *pro hac vice*)
REED SMITH LLP
225 Fifth Avenue
Pittsburgh, PA 15222
(412) 288-3131
drupprecht@reedsmith.com

Elizabeth L. Taylor (admitted *pro hac vice*)
REED SMITH LLP
225 Fifth Avenue
Pittsburgh, PA 15222
(412) 288-3131
etaylor@reedsmith.com

*Counsel for Plaintiff Lowe's Home Centers, LLC*

BARNWELL WHALEY PATTERSON & HELMS, PLLC

/s/ *Margaret M. Harrington*
Christopher M. Hinnant
N.C. State Bar No. 24297
chinnant@banwell-whaley.com
Margaret M. Harrington
N.C. State Bar No. 59933
mahrrington@barnwell-whaley.com
720 N. 3rd Street, Suite 301
Wilmington, NC 28401
Telephone: (910) 679-1388
Facsimile: (910) 679-4663

-and-

NORTON ROSE FULBRIGHT US, LLP

/s/ *Chad Schreiber*
Chad Schreiber
Texas Bar No. 24085732
(*Admitted pro hac vice*)
chad.schreiber@nortonrosefulbright.com
Manuel Mungia
(*Admitted pro hac vice*)
Texas Bar No. 24060310
manuel.mungia@nortonrosefulbright.com
Frost Tower
111 W. Houston Street, Suite 1800
San Antonio, TX 78205
Telephone: (210) 224-5575
Facsimile: (210) 270-7205

*Counsel for Defendant Indemnity Insurance Company of North America*