UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:24-CV-00101-MEO-DCK

LOWE'S HOME CENTERS, LLC,

Plaintiff,

v.

INDEMNITY INSURANCE COMPANY
OF NORTH AMERICA,

Defendant.

MEMORANDUM & ORDER

**THIS MATTER** is before the Court on six motions: (1) Defendant Indemnity Insurance Company of North America's (hereinafter, "Chubb") motion to exclude the testimony of Plaintiff Lowe's Home Centers, LLC's ("Lowe's") retained claims-handling expert, David Bano (Doc. No. 140); (2) Lowe's motion to exclude the testimony of Chubb's retained claims-handling expert, Amy Johnson (Doc. No. 154); (3) Chubb's motion to exclude the testimony and reports of Lowe's retained settlement-valuation expert, Kenneth Fibich (Doc. No. 142); (4) Lowe's motion to exclude the proposed expert opinion of Chubb's retained settlement-valuation expert, Gordon Randall Akin (Doc. No. 147); (5) Lowe's motion to exclude the proposed expert opinion of Chubb's retained appellate expert, Anne Johnson (Doc. No. 161); and (6) Chubb's motion to exclude the testimony and reports of Lowe's retained appellate rebuttal expert, John Gsanger (Doc. No. 144). Because the motions raise overlapping issues under Rule 702, the Court addresses them together. For the reasons below, the

motions to exclude Bano, Amy Johnson, Fibich, and Akin are each granted in part and denied in part, and the motions to exclude Anne Johnson and Gsanger are each granted.

## I. LEGAL STANDARD

### A. Qualification and Reliability of Experiential Experts

Rule 702 permits expert testimony where the witness is "qualified . . . by knowledge, skill, experience, training, or education" and the testimony rests on sufficient facts, reliable principles and methods, and a reliable application of those principles to the facts. Fed. R. Evid. 702. An expert may be qualified on the basis of experience alone, *United States v. Wilson*, 484 F.3d 267, 274 (4th Cir. 2007), and where an expert's opinion is experience-based rather than the product of scientific testing, the touchstone is whether the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). A skilled witness of this type must still "explain how his experience leads to the conclusion reached, why his experience is a sufficient basis for the opinion, and how his experience is reliably applied to the facts." *Wilson*, 484 F.3d at 274 (citation modified). Insurance claims handling is a recognized subject of proper expert testimony grounded in industry experience. *See Clemmons Farming, Inc. v. Silveus Se., LLC*, No. 7:21-cv-126, 2024 WL 314983, at *15 (E.D.N.C. Jan. 26, 2024); *Noble Bottling, LLC v. Gora LLC*, No. 3:20-cv-00363, 2023 WL 105333, at *3 (W.D.N.C. Jan. 4, 2023).

### B. Permissible Industry-Standard Opinions Versus Impermissible Legal Conclusions

"[O]pinion testimony that states a legal standard or draws a legal conclusion by applying law to the facts is generally inadmissible." *Brainchild Surgical Devices, LLC v. CPA Glob. Ltd.*, 144 F.4th 238, 253 (4th Cir. 2025). An expert may describe the "ordinary practices" of an industry but may not instruct the jury on, or purport to conclusively resolve, the governing legal standard itself. *Id.*; *Labudde v. Phx. Ins. Co.*, No. 7:21-CV-197, 2025 WL 3564816, at *3 (E.D.N.C. Dec. 12, 2025). Nor may an expert testify as to another witness's credibility, since assessing a witness's credibility usually lies "within the jury's exclusive purview." *United States v. Lespier*, 725 F.3d 437, 449 (4th Cir. 2013); *see also United States v. Dorsey*, 45 F.3d 809, 815 (4th Cir. 1995).

The analysis is somewhat different for an expert's opinion that conduct was, or was not, consistent with industry standards of "reasonableness." Rule 704(a) provides that "[a]n opinion is not objectionable just because it embraces an ultimate issue," and courts distinguish between (1) an expert reciting a legal standard and declaring it satisfied (impermissible) and (2) an expert applying industry expertise to characterize conduct against industry norms, using the vocabulary of that industry, as distinguished from governing laws (generally permissible, subject to appropriate limits). *See Labudde*, 2025 WL 3564816, at *3–4 (admissibility turns on whether "the terms used by the witness have a separate, distinct and specialized meaning in the law different from that present in the vernacular"). Because "reasonableness" is both an everyday term and a component of the legal standard the jury will be asked to

apply, the risk it poses is less that the testimony is categorically unhelpful under Rule 702 and more that the jury could mistake the expert's industry-standard opinion for a legal conclusion on the ultimate question, or place undue weight on it for that reason—a concern properly addressed under Rule 403's balancing of probative value against the danger of confusing the issues or misleading the jury, together with a clarifying limiting instruction, rather than through wholesale exclusion. These principles apply symmetrically to both parties' experts.

## II. DISCUSSION

### A. Chubb's Motion to Exclude David Bano

#### 1. Qualification and industry-standards testimony

Mr. Bano's forty-year career in the insurance industry, including over a decade as Nationwide's Chief Claims Officer with final claims authority across all lines, is sufficient experience to qualify him to testify regarding insurance claims-handling standards, customs, and practices. *See Wilson*, 484 F.3d at 274. Chubb's objection that Mr. Bano lacks claim-adjusting experience specific to excess commercial liability policies or Texas litigation goes to the weight of his testimony, not its admissibility, particularly given his senior-level oversight of excess liability claims and large-scale litigation across jurisdictions. Mr. Bano is qualified and may testify based on his extensive industry experience as to generally accepted insurance industry claims-handling standards, customs, and practices, and may compare Chubb's conduct against those standards, drawing on both the National Association of Insurance Commissioners ("NAIC") Unfair Claims Settlement Practices Act cited in his report

4

and his own extensive claims-handling experience. *See United Prop. & Cas. Ins. Co. v. Couture*, 639 F. Supp. 3d 590, 599 (D.S.C. 2022) ("Claims handling is a technical subject matter, and [a proffered expert's] practical experience is a viable substitute for a lack of scientific research or publication."). His reliance on Chubb's own claim file, rather than undocumented post-litigation assertions, is a permissible methodological choice and likewise goes to weight rather than admissibility. WL 105333, at *4.

### 2. Opinions characterizing Chubb's conduct as unreasonable or inconsistent with good-faith claims handling

Mr. Bano may testify that Chubb's conduct was, in his opinion, consistent or inconsistent with specific, identified industry claims-handling standards and practices, and may explain the industry basis for that comparison. This is the ordinary province of experience-based claims-handling testimony and is not excluded merely because it touches on an issue the jury must ultimately decide. Fed. R. Evid. 704(a). He may not, however, testify using the phrase "bad faith" or otherwise directly characterize Chubb's conduct as meeting or failing the legal standard for bad faith. "Bad faith" carries a specialized legal meaning distinct from its industry usage, and its use by an expert risks the jury mistaking the expert's opinion for a resolution of the ultimate legal question. *See Labudde*, 2025 WL 3564816, at *3–4. To minimize any risk that the jury will conflate Mr. Bano's industry-standard opinion (including his use of the word "reasonable" or "unreasonable" in an industry-practice sense) with a legal conclusion on reasonableness or bad faith, counsel shall not elicit, and Mr. Bano shall not offer, his opinion in conclusory terms untethered to the specific

industry standard he contends was or was not met. The Court will give the jury an appropriate limiting instruction, either contemporaneous with the testimony or at the close of the case (or both), clarifying that the ultimate determination of reasonableness and bad faith under the governing legal standard is for the jury alone.

### 3. Opinions on what Chubb's claims handlers believed, intended, or meant

Mr. Bano's testimony purporting to know what claims handler Justin Davidson "meant" when he wrote a particular claim note, as distinct from what the document itself says, is excluded. An expert has no specialized ability to divine another witness's subjective intent from a document, and such testimony is the type of impermissible legal opinions akin to invading credibility determinations reserved to the jury. *Lespier*, 725 F.3d at 449. Mr. Bano may testify as to the content of documents in the claim file and how, in his experience, similar entries are typically understood in the industry, but he may not testify as to what a specific individual subjectively believed or intended.

### 4. Opinions characterizing other evidence as "invalid" or "inaccurate"

Mr. Bano's deposition testimony disputing the accuracy or validity of undisputed, authenticated communications authored by other witnesses is excluded. Such testimony does not require specialized knowledge; it is a credibility judgment for the jury. Additionally, permitting an expert to instruct the jury not to credit the plain language of a document risks confusing the issues without any corresponding

6

benefit under Rule 702.

### 5. Scope of testimony beyond industry claims-handling standards

Mr. Bano may not offer opinions on the reasonable settlement valuation of the Sprague Lawsuit, Lowe's potential exposure to punitive damages, what state's law governs this dispute, or the application of the Texas *Stowers* doctrine. Mr. Bano has disclaimed offering opinions on these topics as legal conclusions, and by his own admission lacks relevant expertise on valuation, punitive damages, and the *Stowers* doctrine. To the extent his industry-standards opinion necessarily touches on the information Chubb had available when evaluating settlement exposure, that testimony remains admissible. However, he may not opine on the correct legal valuation of the underlying claim, Lowe's punitive-damages exposure, the governing law, or the *Stowers* doctrine itself.

### B. Lowe's Motion to Exclude Amy Johnson

### 1. Qualification and industry-standards testimony

Ms. Amy Johnson, like Mr. Bano, may testify regarding generally accepted insurance industry claims-handling standards, customs, and practices, and may offer her opinion, grounded in her industry experience, as to whether Chubb's conduct was consistent with those specific standards. Lowe's motion does not challenge Ms. Johnson's qualifications, and the same principles permitting Mr. Bano's experience-based testimony apply equally to Ms. Johnson. *See Clemmons Farming*, 2024 WL

7

314983, at *15.

### 2. Opinions on what Chubb's claims handlers believed

Ms. Johnson's opinion states she "saw no evidence that [Chubb] objected to the $90 million settlement for any reason other than a reasonable belief that the settlement value of the Underlying Litigation was below its $75 million attachment point." This testimony is excluded to the extent it purports to characterize Chubb personnel's subjective belief. As with Mr. Bano, an expert may not testify as to what a witness subjectively believed; that determination depends on the jury's assessment of the witness's credibility in light of the evidentiary record, not expert interpretation. *Lespier*, 725 F.3d at 449. Ms. Johnson may testify regarding what the claim file and other record evidence reflect and how, in her experience, such entries are customarily understood in the industry (including, for example, the customary distinction between a "limits loss projection" or "potential exposure" entry and an insurer's considered settlement valuation), but she may not testify as to what Chubb's employees actually believed.

### 3. Opinions stating or applying a legal standard for bad faith

Ms. Johnson's report reads (at times) more like a legal brief than an expert report. This is understandable, considering she is an experienced insurance lawyer. Ms. Johnson may not, however, opine or instruct the jury on the legal standard governing Lowe's bad faith or unfair trade practices claims, including any suggestion that such a claim requires a showing of "malice, gross negligence, or reckless disregard," nor may she offer the ultimate conclusion that Chubb did or did not act

with such a state of mind. Determining and instructing the jury on the governing legal standard is the Court's function, and applying that standard to the facts is the jury's function. *Brainchild*, 144 F.4th at 253; *Labudde*, 2025 WL 3564816, at *3.

### 4. Opinion that Chubb "acted reasonably and consistent with industry standards"

For the same reasons discussed above as to Mr. Bano, Ms. Johnson is not categorically barred from opining that Chubb's conduct was consistent with industry standards of reasonableness, so long as her opinion is tied to specific, identified industry standards and practices rather than offered as a bare, conclusory pronouncement that Chubb "acted reasonably." She may not use the term "bad faith" or otherwise directly opine that Chubb's conduct did or did not constitute bad faith. As with Mr. Bano, the risk that the jury will mistake an industry-standard "reasonableness" opinion for a resolution of the ultimate legal question can be addressed through the same limiting instruction described above, rather than exclusion of the underlying opinion. Fed. R. Evid. 403.

### 5. Opinion interpreting the "consent to settle" provision

Ms. Johnson's opinion that "the consent to settle provision at issue here does not limit [Chubb's] right to withhold consent" is excluded. Regardless of whether offered as background or opinion, this statement addresses the legal effect of specific policy language, which is a question of law for the Court, not a proper subject of expert testimony. *Shea Homes, LLC v. Old Republic Nat'l Title Ins. Co.*, No. 05-cv-005, 2007 WL 3334210, at *6 (W.D.N.C. Nov. 5, 2007) ("[A]n expert may not proffer opinions regarding the legal effect of the contract."). To the extent Ms. Johnson seeks to

explain, as a matter of industry drafting custom, that insurance contracts sometimes include express qualifying language limiting an insurer's right to withhold consent and sometimes do not, that testimony concerning industry drafting practice, untethered to the legal effect of this specific policy, remains permissible.

### C. Chubb's Motion to Exclude Kenneth Fibich

#### 1. Qualification and experience-based methodology

Kenneth Fibich, a Texas trial attorney with over five decades of experience trying, evaluating, and settling personal injury and wrongful death cases, is qualified under the same experiential-expert framework applied above to offer an opinion regarding the reasonable settlement value of the Sprague Lawsuit. *See Wilson*, 484 F.3d at 274; *Kumho Tire*, 526 U.S. at 152. His report identifies six factors he contends are routinely considered by trial attorneys valuing personal injury and wrongful death exposure—the conduct causing the injury, the injuries and proof thereof, the identity of the parties, controlling law, venue and region, and the skill of counsel— and applies those factors over more than twenty pages to a record that includes thousands of pages of document productions, deposition transcripts, and mock jury results. Chubb does not argue that these factors are inconsistent with accepted practice in the field; it challenges only isolated exchanges from Fibich's deposition. A qualified, experienced trial attorney's application of an articulated multi-factor framework to a substantial evidentiary record is a permissible foundation for expert

10

testimony. *See* Fed. R. Evid. 702 advisory committee's note to 2000 amendment.

### 2. The circular-reasoning objection

Chubb's central argument—that Fibich's opinion reduces to "the settlement was reasonable because it settled for that amount"—identifies a genuine tension in Fibich's deposition testimony, but it does not warrant wholesale exclusion of his opinion. Whatever concessions Fibich made when pressed with hypothetical dollar figures go to the weight a jury should give his ultimate opinion, not to whether he applied any principle or method at all where, as here, his report separately applies six enumerated factors to the specific facts of the Sprague Lawsuit. *Sommerville v. Union Carbide Corp.,* 149 F.4th 408, 423 (4th Cir. 2025) ("[Q]uestions regarding the factual underpinnings of the [expert witness'] opinion affect the weight and credibility of the witness' assessment, not its admissibility."). That said, Fibich may not testify, as a freestanding proposition, that the $90 million settlement was reasonable "because that is the amount that settled the case," or offer similar circular formulations unconnected to his six-factor analysis. Fibich may testify to his opinion regarding the reasonable settlement value of the Sprague Lawsuit and the analysis underlying it, including his application of the six factors identified in his report. But counsel may not elicit, and Fibich may not offer, the settlement figure itself as self-validating proof of its own reasonableness.

### 3. The ipse dixit objection

Fibich's admission that he cannot identify precisely where a settlement of the Sprague Lawsuit would have become unreasonable is not, standing alone, a basis for

exclusion. An experienced trial attorney's inability to draw a bright line at the margins of his opinion does not render his opinion regarding the specific settlement before him unreliable, particularly where, as Fibich testified and Chubb's own expert agrees, valuing a case of this kind "is not an exact science" and reasonable minds can differ. Chubb is free to cross-examine Fibich on his refusal to identify a ceiling above $90 million, and the jury may weigh that refusal in assessing the persuasiveness of his opinion, but it does not transform an otherwise-explained opinion into inadmissible *ipse dixit*.

### 4. Appellate sustainability

This aspect of Fibich's proposed testimony fares differently than the rest of his opinion. Fibich's report does not merely identify appellate risk as one input among several bearing on settlement value; it affirmatively opines that the Texas Supreme Court "would decline to overturn or reduce" a $90 million damage award in favor of the Spragues—a verdict that, because the Sprague Lawsuit settled before trial, was never actually rendered. That opinion asks the jury to credit a prediction about how an appellate court would resolve a challenge to a judgment that does not exist, based on jury findings, an evidentiary record, and trial rulings that likewise do not exist because no trial occurred. Unlike Fibich's opinion regarding the reasonable settlement value of the case—which is anchored in the actual settlement, the actual mediator's proposal, and actual comparator verdicts—an opinion that a hypothetical verdict would survive appellate review has no comparable factual anchor. It is speculation layered on speculation: an assumed jury award, evaluated under a fact-

12

intensive appellate standard, *see Gregory v. Chohan*, 670 S.W.3d 546 (Tex. 2023), applied to a trial record that was never created. Such testimony is not "based on scientific, technical, or other specialized knowledge" as opposed to "belief or speculation," *Oglesby*, 190 F.3d at 250. Further, Fibich's inability to identify a single Texas appellate decision affirming non-economic damages in excess of $10 million confirms that his prediction has no comparable data points from which to extrapolate. Fibich's opinion as to appellate sustainability amounts to speculation beyond the bounds of reliable expert methodology. Fibich, therefore, may not testify that a hypothetical Sprague verdict would or would not have been sustained, reduced, or reversed on appeal.

That said, Fibich may still testify, as one component of his six-factor methodology, that the existence of uncertainty surrounding appellate review of large noneconomic damage awards—including the then-recent *Chohan* decision—was among the considerations bearing on the parties' respective incentives to settle and on his opinion regarding the reasonable settlement value of the case. That narrower testimony is grounded in the undisputed fact that *Chohan* existed and was actively discussed by the parties and their counsel at the time of settlement; it does not require Fibich to predict the outcome of an appeal that never occurred.

### D. Lowe's Motion to Exclude Gordon Randall Akin

#### 1. Qualification and comparator-verdict methodology

Gordon Randall Akin, an attorney and mediator with over 44 years of experience litigating and mediating cases in the same area of Texas where the

13

Sprague Lawsuit was pending, is qualified under the same experiential-expert framework applied to Fibich, and to Mr. Bano and Ms. Amy Johnson above, to offer an opinion regarding the reasonable settlement value of the Sprague Lawsuit. *Wilson*, 484 F.3d at 274. Lowe's does not seriously dispute Akin's qualifications; it argues that his reliance on comparator verdicts is an inherently unreliable methodology. But Lowe's own retained expert, Fibich, likewise references comparator verdicts in support of his opinion, and reliance on comparable verdicts by an experienced trial attorney assessing settlement exposure is a recognized, if imperfect, tool of the trade rather than a novel scientific technique subject to strict testability requirements. *See, e.g.*, *Chohan*, 670 S.W.3d at 561 n.12 (declining to foreclose the possibility that comparison to other cases may play some role in assessing whether an amount of noneconomic damages is reasonable). That the universe of comparators necessarily excludes confidentially settled cases, that Akin located his comparators through an admittedly unsystematic process, and that he could not fully explain why the outlier $730 million *Ramsey* verdict should be discounted are all legitimate grounds for cross-examination. But they go to the weight of Akin's opinion rather than its admissibility. *Sommerville*, 149 F.4th at 423 ("[Q]uestions regarding the factual underpinnings of the [expert witness'] opinion affect the weight and credibility of the witness' assessment, not its admissibility.") (quoting *Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 195 (4th Cir. 2017)) (cleaned up).

14

### 2.  The "arbitrary" objection

Akin's deposition concession that arriving at "any number" in this context is "pretty arbitrary" (Doc. No. 151-3 at 4) mirrors Fibich's own acknowledgment that settlement valuation is "not an exact science." (Doc. No. 142-5 at 25). Read in context, Akin's testimony reflects the ordinary imprecision inherent in valuing noneconomic damages rather than an admission that his $50 million figure was the product of guesswork untethered to his analysis of the case. Akin explained that his figure accounted for the aggravating circumstances of the case relative to two other valuations he considered (an initial $15–25 million evaluation and a $75–100 million defense-side figure) and his decades of experience evaluating and mediating similar cases in the relevant venue. (Doc. No. 151-3 at 4–5). That explanation satisfies the requirement that an experiential witness explain "how his experience leads to the conclusion reached . . . and how his experience is reliably applied to the facts." *Wilson*, 484 F.3d at 274.

### 3.  Reliance on post-settlement Chohan progeny

Akin's report and anticipated testimony citing *Alonzo*, *Team Industrial Services*, and *Werner*—all decided after Lowe's accepted the Sprague mediator's proposal—present a closer question. Chubb's decision not to consent to the settlement must be evaluated based on the information reasonably available to it at the time it made that decision. *See Roberts v. Am. Gen. Prop. Ins. Co.*,1996 WL 157734, at *3 (4th Cir. 1996) (citing B.R. Ostrager and T.R. Newman, *Handbook on Insurance*

15

*Coverage Disputes,* § 12.14 (5th ed. 1992)).

Evidence of appellate decisions issued months or years after that decision, offered to prove that Chubb's contemporaneous judgment was in fact correct, risks hindsight bias and jury confusion. To the extent Akin offers these later court decisions as retrospective vindication of the reasonableness of Chubb's April 2024 decision, that testimony is excluded. To the extent Akin instead offers these decisions for the more limited purpose of describing, from his professional experience, the general trajectory of Texas appellate scrutiny of large noneconomic damage awards and using that trajectory to explain the analytical framework an experienced Texas trial lawyer would have applied in April 2024, that testimony remains admissible. However, it would be subject to a limiting instruction that the jury may not consider these later decisions as proof that Chubb's decision was, in hindsight, correct, but only as background informing Akin's methodology and his opinion regarding the reasonable settlement value of the case as of the relevant time.

### 4. Appellate sustainability of a hypothetical verdict

For the reasons explained above with respect to Fibich, Akin likewise may not offer an opinion predicting whether a hypothetical, never-rendered Sprague Lawsuit verdict would have been affirmed, reduced, or reversed on appeal. Like the excluded portion of Fibich's opinion, any such prediction would rest on two layers of speculation—an assumed jury verdict and an assumed appellate disposition of that non-existent verdict—rather than on facts or data to which Akin's experience could be reliably applied. *See Oglesby*, 190 F.3d at 250. Akin may testify, consistent with

16

his experience and the Court's analysis in Part D.1 above, that the risk of appellate reversal of a large noneconomic damage award, and the general trend of Texas appellate scrutiny of such awards reflected in *Chohan*, informed his opinion regarding the reasonable settlement value of the case. He may not testify that a Sprague verdict of any particular amount would or would not have survived appeal.

### 5. Opinion on Chubb's claims-handling reasonableness

Consistent with the Court's treatment of Mr. Bano and Ms. Johnson above, Akin may not opine that Chubb "did not act unreasonably in refusing to fund its portion of the settlement" framed as an assessment of Chubb's claims-handling conduct, since Akin has admitted that insurance-industry claims-handling custom and practice "is not" his area of expertise and that he has never worked in a claims-handling or adjusting capacity. Akin may testify to his opinion regarding the reasonable settlement value of the Sprague Lawsuit and, derivatively, that a settlement above that value would not have been objectively reasonable from a valuation standpoint. But he may not testify, in the vocabulary of claims-handling reasonableness, that Chubb's conduct in withholding consent satisfied or did not satisfy applicable insurance-industry standards, a topic reserved for other experts more qualified to render this type of opinion.

### E. Lowe's Motion to Exclude Anne Johnson

#### 1. Relevance

Ms. Johnson's proposed opinions—that any verdict in the Sprague Lawsuit would have consisted primarily of noneconomic damages, that such an award would

face a difficult road on appeal in light of *Gregory v. Chohan*, 670 S.W.3d 546 (Tex. 2023), and that the trial court's pretrial rulings evidenced legal error—are irrelevant to the issue this jury must decide. The reasonableness of Chubb's refusal to consent to the Sprague Settlement turns on  facts the Chubbs was aware of and considered when it withheld consent. Chubb's own claims handlers testified that they did not seek, obtain, or rely on any appellate legal analysis—from Ms. Johnson or anyone else—before deciding to withhold consent, and Ms. Johnson's reports were not prepared until well after that decision was made and this litigation commenced. An opinion Chubb never had, and could not have relied upon, does not inform what Chubb actually knew or thought at the relevant time. And Chubb's effort to recast Ms. Johnson's testimony as going "to helping the jury understand the context of [Chubb's] decision" does not cure the defect; it confirms it. A post hoc rationalization is not context; it is advocacy dressed as expert testimony.

Chubb responds that Ms. Johnson's opinions are independently relevant to the objective reasonableness of the $90 million settlement, since the sustainability of a verdict on appeal is, as Lowe's own valuation expert acknowledged, one factor bearing on a case's settlement value. That argument fails for the same reason the Court has already rejected comparable testimony from Fibich and Akin: an opinion regarding whether a hypothetical, never-rendered verdict would have been affirmed, reduced, or reversed on appeal is not a fact bearing on settlement value at all—it is a prediction about an event that never occurred, based on a trial record that does not exist. Such an opinion cannot inform the objective reasonableness of the settlement any more

18

reliably than it can inform Chubb's subjective state of mind, and for the same reason: there is nothing in the record that tethers the opinion.

Nor does it salvage matters to offer a narrower slice of Ms. Johnson's testimony as mere background—for example, the general composition of likely damages or the broader *Chohan* landscape—rather than her ultimate appellate prediction. That testimony was no more a part of Chubb's contemporaneous decision-making than the rest of her report. It thus fails for the same relevance problem, independent of the speculation problem addressed below.

### 2. Reliability

Ms. Johnson's opinions independently fail Rule 702's reliability requirement for the reasons explained more fully above with respect to Fibich and Akin. Ms. Johnson acknowledges that any legal analysis of the sustainability of a jury verdict "requires an understanding of the trial record" and that, because the Sprague Lawsuit settled, "we don't know what the trial record would have been." Johnson Dep. Tr. at 90:14–25. Her opinion is thus, by her own admission, an exercise in reconstructing evidence that was never admitted, rulings that were never made, and arguments that were never presented—and then predicting how a Texas appellate court would have resolved challenges to all of it. That her thirty years of experience as a Texas appellate lawyer are unquestioned does not transform this exercise into a reliable methodology; experience qualifies a witness to reliably apply a methodology to the facts of a case, it does not license the witness to invent the facts to which that methodology is then applied. "[E]xperience alone" must still be "reliably applied to

19

the facts," *Wilson*, 484 F.3d at 274, and there are no facts here beyond the settlement itself for Ms. Johnson's appellate opinions to be applied to.

### 3. Improper legal opinion

Finally, Ms. Johnson's report goes beyond providing background on the Texas appellate system and repeatedly draws legal conclusions—for example, that particular pretrial rulings were erroneous, that particular anticipated jury arguments would have been improper, and that such errors would not have been harmless and would have warranted reversal. These are precisely the sort of "legal conclusions about disputed issues" that Rule 702 does not permit an expert to resolve for the jury. *Honeywell Int'l Inc. v. Opto Elecs. Co.*, No. 3:21-cv-00506, 2023 WL 3029264, at *12 (W.D.N.C. Apr. 20, 2023); *Brainchild*, 144 F.4th at 253. Unlike the industry-standards testimony the Court has permitted from Mr. Bano and Ms. Johnson (Amy), supra Parts A–B, which applies claims-handling expertise to characterize conduct against industry norms, Ms. Johnson's opinions here purport to instruct the jury on how Texas substantive and procedural law would have applied to a hypothetical trial—a role reserved to the Court and, ultimately, to no one, since "Article III courts do not offer advisory opinions on 'what the law would be upon a hypothetical state of facts.'" *Zurich Am. Ins. Co. v. Covil Corp.*, 2020 WL 4483236, at 2 (M.D.N.C. Aug. 4, 2020).

For these reasons, Ms. Johnson may not testify regarding the sustainability on appeal of a hypothetical Sprague Lawsuit verdict, the propriety of anticipated jury arguments, or the correctness of the trial court's pretrial rulings. Lowe's Motion to

Exclude the Proposed Expert Opinion of Anne Johnson is granted.

### F. Chubb's Motion to Exclude John Gsanger

#### 1. Gsanger's testimony is moot in light of Ms. Johnson's exclusion

Lowe's retained Mr. Gsanger solely to rebut Ms. Johnson's opinions regarding the sustainability of a hypothetical Sprague Lawsuit verdict on appeal, and Lowe's does not contend that Mr. Gsanger offers any opinion beyond that rebuttal scope. *See* (Doc. No. 185 at 1) (explaining that Mr. Gsanger's "rebuttal opinions are focused on the likelihood of reversal on appeal in Texas appellate courts, which is what Ms. Johnson addressed in her report," and that he did not address remittitur or intermediate appellate review because "Ms. Johnson's report did not analyze or opine on those issues"). A rebuttal expert may be offered "solely to contradict or rebut evidence on the same subject matter identified by another party." Fed. R. Civ. P. 26(a)(2)(D)(ii). Because Ms. Johnson's opinions on that subject matter are excluded, there is no opinion left for Mr. Gsanger to rebut. His testimony on that topic is therefore excluded as irrelevant. Fed. R. Evid. 401, 402.

#### 2. Gsanger's opinions independently fail for the same reasons as Ms. Johnson's and Fibich's

Even apart from mootness, Mr. Gsanger's own opinion—that it would be "unlikely that the Texas appellate process would have reversed a judgment for the Sprague family if the jury had awarded them the amount of the [$90 million] settlement" (Doc. No. 144-5 at 5)—suffers from the identical defect the Court has identified with respect to Fibich's and Akin's appellate-sustainability opinions, and with respect to Ms. Johnson's opinions above. It is a prediction about the disposition

of a verdict that was never rendered, built on a trial record that does not exist. This opinion is no more reliable when offered to reach the opposite conclusion than when offered by Ms. Johnson to reach the conclusion Chubb favors. The Court's conclusion that this category of opinion is inadmissible speculation applies with equal force regardless of which party's expert offers it or which direction the prediction runs.

For these reasons, Chubb's Motion to Exclude the Testimony and Reports of John Gsanger is granted.

## IV. CONCLUSION

Both Mr. Bano and Ms. Amy Johnson may testify as to generally accepted insurance industry claims-handling standards, customs, and practices, grounded in their respective decades of insurance industry experience, and may offer their opinions as to whether Chubb's conduct was consistent with specific, identified standards—including opinions framed in terms of industry "reasonableness"—subject to the limiting instruction described above. Neither expert may testify using the term "bad faith" or otherwise directly conclude that Chubb's conduct did or did not meet the legal standard for bad faith, testify to what any witness subjectively believed or intended, opine on the legal effect of specific policy language, or testify to matters outside the scope of their qualified expertise as identified above. The parties' remaining disputes as to the credibility, weight, and persuasiveness of each expert's opinions are properly left for cross-examination and the jury's determination.

Similarly, both Fibich and Akin may testify, grounded in their respective decades of experience trying, evaluating, and mediating personal injury and wrongful

death cases in Texas, as to their opinion regarding the reasonable settlement value of the Sprague Lawsuit, including their application of enumerated valuation factors and comparator verdicts to the specific facts of that case, subject to the limitations identified above: Fibich may not offer the $90 million settlement figure as self-validating proof of its own reasonableness untethered to his six-factor analysis; neither Fibich nor Akin may testify that a hypothetical, never-rendered Sprague Lawsuit verdict would have been affirmed, reduced, or reversed on appeal, as opposed to testifying that the general risk and uncertainty of appellate review of large noneconomic damage awards informed their respective valuation opinions; and Akin may not rely on post-settlement appellate decisions as retrospective proof that Chubb's decision was correct, nor testify, in the vocabulary of claims-handling reasonableness, that Chubb's conduct in withholding consent satisfied or failed to satisfy applicable insurance-industry standards. As with Mr. Bano and Ms. Amy Johnson, the parties' remaining disputes as to the sufficiency of each expert's comparator cases, the treatment of confidential settlements, and the overall weight and credibility of each expert's opinion are properly left for cross-examination and the jury's determination.

Ms. Anne Johnson may not testify regarding the sustainability on appeal of a hypothetical, never-rendered Sprague Lawsuit verdict, the propriety of anticipated jury arguments in a trial that never occurred, or the correctness of the trial court's pretrial rulings, for the same reasons the Court has excluded comparable testimony from Fibich and Akin, and because Chubb did not consider her analysis, or anything

resembling it, when it decided to withhold consent to the Sprague Settlement. Because Mr. Gsanger was retained solely to rebut the now-excluded portions of Ms. Anne Johnson's opinions, and because his own opinion suffers from the identical speculative-prediction defect, his testimony is excluded as well.

For the foregoing reasons:

1. Chubb's Motion to Exclude the Testimony of David Bano (Doc. No. 140) is **GRANTED IN PART and DENIED IN PART**, consistent with Part A above;

2. Lowe's Motion to Exclude the Proposed Expert Opinion of Amy Johnson (Doc. No. 154) is **GRANTED IN PART and DENIED IN PART**, consistent with Part B above;

3. Chubb's Motion to Exclude the Testimony and Reports of Kenneth Fibich (Doc. No. 142) is **GRANTED IN PART and DENIED IN PART**, consistent with Part C above;

4. Lowe's Motion to Exclude the Proposed Expert Opinion of Gordon Randall Akin (Doc. No. 147) is **GRANTED IN PART and DENIED IN PART**, consistent with Part D above;

5. Lowe's Motion to Exclude the Proposed Expert Opinion of Anne Johnson (Doc. No. 161) is **GRANTED**; and

6. Chubb's Motion to Exclude the Testimony and Reports of John Gsanger (Doc. No. 144) is **GRANTED**.

   **SO ORDERED.**

Matthew E. Orso
United States District Judge

24